PHILIP R. SELLINGER
United States Attorney
ROBERT TAJ MOORE
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 297-2014
Robert.moore3@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOEL SALGADO <br><br> *Petitioner* <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> *Respondent* | HON. WILLIAM J. MARTINI <br><br> Civ. No. 24-322 <br> (Crim. No. 19-659) |

————————————————————————

**MEMORANDUM OF LAW OF THE UNITED STATES IN OPPOSITION TO NOEL SALGADO'S PRO SE MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

————————————————————————

PHILIP R. SELLINGER
United States Attorney

On the Brief:

ROBERT TAJ MOORE
Assistant United States Attorney

- 1 -

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................... iv

STATEMENT OF FACTS .......................................................................... - 2 -

ARGUMENT ................................................................................................ - 8 -

I.      LEGAL STANDARD FOR SECTION 2255 RELIEF ............................. - 8 -

II.     SALGADO'S CONSTITUTIONAL AND SCIENTER CLAIMS CANNOT
        BE RAISED FOR THE FIRST TIME IN A 2255 MOTION AND ARE
        NONETHELESS MERITLESS ............................................................... - 11 -

        A.      Salgado's Conviction and Sentence Are Consistent with the
                Fifth, Ninth, and Tenth Amendments to the United States
                Constitution ......................................................................... - 14 -

                i.      Fifth and Ninth Amendments ............................................ - 14 -

                ii.     Tenth Amendment ............................................................ - 15 -

        B.      Salgado's Claim that 21 U.S.C. § 802(25) has a Scienter
                Requirement is Procedurally Barred and Without Merit ...... - 16 -

        C.      Section 802(25) is not Unconstitutionally Vague .................... - 19 -

        III.    SALGADO'S CLAIMS OF INEFFECTIVE ASSISTANCE OF
                COUNSEL ARE WITHOUT MERIT ............................................... - 21 -

        A.      Defense Counsel was not Ineffective for Failing to Assert that
                there was a Scienter Requirement for Causing Bodily Injury .... -
                24 -

        B.      Salgado's Claims that Defense Counsel was Unprepared, Failed
                to Make Certain Constitutional Arguments, and Failed to
                Investigate a "But For" Causation Defense Fail the *Strickland*
                Test ....................................................................................... - 25 -

                i.      General Preparation and Research ................................... - 25 -

                ii.     "But For" Causation ......................................................... - 27 -

**CONCLUSION** ............................................................................................- 34 -

# TABLE OF AUTHORITIES

### CASES                                                                PAGE(S)

*Berryman v. Morton,*
   100 F.3d 1089 (3d Cir. 1996)..................................................................... 32

*Beuhl v. Vaughn,*
   166 F.3d 163 (3d Cir. 1999).......................................................... 22, 23, 25

*Bousley v. United States,*
   523 U.S. 614 (1998) .................................................................................. 13

*Bradica v. United States,*
   2013 WL 454911 (W.D. Pa. Feb. 6, 2013)......................................... 11, 23

*Brown v. Allen,*
   344 U.S. 443 (1953) .................................................................................. 13

*Burrage v. United States,*
   571 U.S. 204 (2014) ............................................................................ 27, 28

*Cockrell v. United States,*
   2016 WL 11190470 (E.D. Tex. Oct. 18, 2016) ........................................ 18

*Coleman v. Thompson,*
   501 U.S. 722 (1991) .................................................................................... 9

*Colten v. Kentucky,*
   407 U.S. 104 (1972) .................................................................................. 20

*Connelly v. General Const. Co.,*
   269 U.S. 385 (1926) .................................................................................. 21

*Gov't of the V.I. v. Weatherwax,*
   77 F.3d 1425 (3d Cir. 1996)....................................................................... 22

*Gov't of V.I. v. Nicholas,*
   759 F.2d 1073 (3d Cir. 1985)....................................................................... 8

*Hill v. Lockhart,*
   474 U.S. 52 (1985) .................................................................................... 23

*Hill v. United States,*
   368 U.S. 424 (1962) .................................................................................... 8

*Kolender v. Lawson,*
  461 U.S. 352 (1983) ................................................................. 19

*Lockhart v. Fretwell,*
  506 U.S. 364 (1993) ...................................................... 10, 21, 23

*Maynard v. Cartwright,*
  486 U.S. 356 (1988) ................................................................. 20

*Murray v. Carrier,*
  477 U.S. 478 (1986) .......................................................... passim

*Okereke v. United States,*
  307 F.3d 117, 120 (3d Cir. 2002).................................................8

*Palmer v. Hendricks,*
  592 F.3d 386 (3d Cir. 2010)................................................ 11, 15, 23, 24

*Reed v. Ross,*
  468 U.S. 1 (1984) ................................................................. 13

*San Filippo v. Bongiovanni,*
  961 F.2d 1125 (3d Cir. 1992)................................................ 20, 21

*Shaw v. United States,*
  2023 WL 4702195 (D.N.J. Sep. 1, 2023)......................................... 30, 31

*Smith v. Robbins,*
  528 U.S. 259 (2000) ............................................................... 10

*Strawderman v. United States,*
  436 F. Supp. 503 (E.D. Va. April 12, 1977) ...................................... 16, 26

*Strickland v. Washington,*
  466 U.S. 668 (1984) .......................................................... passim

*United States v. Addonizio,*
  442 U.S. 178 (1979) ............................................................... 8

*United States v. Arrington,*
  13 F.4th 331 (3d Cir. 2021) ...................................................... 34

*United States v. Cannistraro,*
  734 F. Supp. 1110 (D.N.J. 1990)..................................................8

*United States v. Cleary,*
  46 F.3d 307 (3d Cir. 1995)........................................................8

*United States v. Cooper,*
   990 F.3d 576 (8th Cir. March 2, 2021) ................................................................ 19

*United States v. DeRewal,*
   10 F.3d 100 (3d Cir. 1993)........................................................................................ 9

*United States v. Essig,*
   10 F.3d 968 (3d Cir. 1993)........................................................................................ 9

*United States v. Frady,*
   456 U.S. 152 (1982) ................................................................................... passim

*United States v. Gray,*
   878 F.2d 702 (3d Cir. 1989)................................................................................... 22

*United States v. Jones,*
   938 F.2d 447 (3d Cir. 1991)................................................................................... 26

*United States v. Lore,*
   26 F. Supp. 2d 729 (D.N.J. 1998)......................................................................... 10

*United States v. Mazurie,*
   419 U.S. 544 (1975) ............................................................................................... 20

*United States v. Moya,*
   5 F.4th 1168 (10th Cir. 2021)................................................................................ 14

*United States v. Otero,*
   502 F.3d 331 (3d Cir. 2007)................................................................................... 24

*United States v. Piaquadio,*
   2021 WL 2946472 (3d Cir. July 14, 2021) .......................................................... 18

*United States v. Sanders,*
   165 F.3d 248 (3d Cir. 1999)................................................................... 9, 23, 25, 26

*United States v. Seals,*
   915 F.3d 1204 (8th Cir. Feb. 15, 2019) ............................................................... 19

*United States v. Teague,*
   953 F.2d 1525 (11th Cir. 1992) ............................................................................ 10

*United States v. Thomas,*
   221 F.3d 430 (3d Cir. 2000)................................................................... 11, 15, 23

*Word v. United States,*
   604 F.2d 1127 (8th Cir. 1979) ................................................................................ 8

**<u>Federal Statutes</u>**

21 U.S.C. § 801 ................................................................................. 20

21 U.S.C. § 802(25) ................................................................... passim

21 U.S.C. § 841(a)(1) ......................................................... 2, 17, 24, 28

21 U.S.C. § 841(b)(1)(C) ................................... 17, 18, 20, 21, 28

21 U.S.C. § 846 ................................................................................... 2

28 U.S.C. § 2253(c)(2) ................................................................... 34

28 U.S.C. § 2255 ........................................................................ passim

28 U.S.C. § 2255(b) .................................................................. 13, 34

## PRELIMINARY STATEMENT

Noel Salgado ("Salgado"), a leader of a drug trafficking organization ("DTO") and an inmate of Bayside State Prison at the time of his crime, was convicted at trial of conspiracy to distribute and possess with intent to distribute heroin and fentanyl, and distribution and possession with intent to distribute heroin and fentanyl resulting in serious bodily injury.

In the time since his conviction, this Court has denied Salgado's post-trial motions, and the United States Court of Appeals for the Third Circuit affirmed his conviction.  Salgado now asks this Court to vacate, correct, or set aside his conviction for several reasons, including ineffective assistance of counsel, that are without merit. As explained below, this Court should deny the Motion without a hearing (and decline to issue a certificate of appealability) because the law and evidence fatally undermine Salgado's arguments and grounds for relief.

## STATEMENT OF FACTS

On September 17, 2019 a federal grand jury sitting in Newark, New Jersey, returned a two-count Indictment charging Salgado and Rodgerick Garrett ("Garrett") with: (1) in Count One, conspiracy to distribute and possess with intent to distribute heroin and fentanyl, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and in violation of 21 U.S.C. § 846; and (2) in Count Two, distribution and possession with intent to distribute heroin and fentanyl resulting in serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). D.N.J. Crim. No. 19-659, ECF No. 32. Trial in this matter commenced against both co-defendants on October 20, 2021, and concluded on October 26, 2021. The following evidence was adduced at trial, and, based on the jury's verdict as to Salgado, proven to be true:

Beginning in or around June 2015, law enforcement was investigating a DTO responsible for distributing heroin, fentanyl, cocaine base, and other narcotics inside Bayside State Prison, a New Jersey Department of Corrections facility located in Leesburg, New Jersey. PSR ¶ 11; Salgado Trial Transcript ("Trial Tr.") 10/20/21 at 16-17. Investigators determined that Salgado, who was incarcerated at Bayside State Prison at the time, was the leader of the DTO. PSR ¶¶ 11-12. Law enforcement determined that Garrett and Jasmir Humphrey ("Humphrey"), both of whom were residents of Jersey City at the time, were also members of the DTO. *See* PSR ¶¶ 11, 13-14.

- 2 -

The investigation was prompted, in part, by an incident that occurred inside Bayside State Prison on October 19, 2015. On that date, Michael Rafferty ("Rafferty"), an inmate, fell unconscious after using heroin he had purchased from Salgado, a fellow inmate.

At trial, the Government put forth evidence that just two days prior, on October 17, 2015, Salgado called Garrett from a prison phone. As with all calls made by inmates, the telephone call between Salgado and Garrett was recorded. During the call, Salgado asked Garrett if Garrett had any "blank…tapes" available. Gov't Trial Exhibit 400 (Audio Recording of October 17, 2015 Telephone Conversation between Salgado and Garrett). As explained to the jury, law enforcement subsequently reviewed the recorded call and understood the reference to be code for prepackaged heroin. Trial Tr. 10/22/2021 at 138-39. Garrett responded that Salgado would have to purchase a "nice quantity." Gov't Trial Exhibit 400. Salgado asked, "If- ifif- if I can- I can do motherfuckin' five tapes and shit, what would be the number on it?" (asking Garrett what Garrett would charge for five bundles of heroin).[1] *Id*. Garrett responded, "Ummmm let's see, maybeummm-maybe $60, $60 or more" (stating that he could provide five bundles of heroin for $60). *Id*. Salgado indicated he would accept that price. *Id*.

Approximately two hours later, Salgado made another phone call from inside the prison, this time to Humphrey. As explained to the jury at trial, during the call,

---

[1] A "deck" of heroin commonly refers to a single-dose packet, or glassine envelope, of heroin. A "bundle" of heroin commonly refers to approximately 10 decks of heroin,

Humphrey told Salgado that "Boo," referring to Garrett's alias, had instructed her to "come through." Gov't Trial Exhibit 401 (Audio Recording of October 17, 2015 Telephone Conversation between Salgado and Humphrey). Salgado then directed Humphrey to "just do five" (directing Humphrey to package five bundles of heroin to smuggle into the prison). *Id.* Salgado added, "Make sure you motherfuckin' make sure you fix it right ya heard, but if they- if they- if they motherfuckin' if they little, you can put- you can put- you can double them up, put two, two, ya know what I mean? . . . . [L]ike squish it like- know what I am saying?" *Id.* Humphrey indicated that she understood. Id. Salgado asked her again if she knew what she was doing, to which Humphrey responded, "Duhhh," indicating that she understood. *Id.* Several minutes later in the call, Salgado implored Humphrey to "fix everything right," which law enforcement again understood to mean package the heroin for smuggling into Bayside State Prison. Id. Humphrey responded, "I know." *Id.*

According to records from the New Jersey Department of Corrections ("NJDOC") and testimony Humphrey provided at trial, Humphrey visited Salgado at Bayside State Prison the very next day, on October 18, 2015. Trial Tr. 10/22/2021 at 145-46. One day later, on October 19, 2015, Rafferty was found unresponsive on the floor of his cell. Trial Tr. 10/21/2021 at 140-41. Emergency medical personnel responded and determined that Rafferty was suffering from a drug overdose. Trial Tr. 10/22/2021 at 102-03. After initially administering CPR, medical personnel then

---

often packaged together. A "brick" of heroin commonly refers to approximately 50 decks, or 5 bundles, of heroin, often packaged together.

administered Narcan, an opiate antidote, and Rafferty regained consciousness. Trial Tr. 10/21/2021 at 40, 45-47, 52. Rafferty testified that he informed Bayside State Prison personnel that he had used heroin and that there was more in his prison cell. *See id.* at 140-45, 157. Specifically, Rafferty stated that he had used three decks of heroin and hid four additional decks in his cell. *Id.* at 143-44. Rafferty testified that he purchased this heroin from Salgado, and that he had previously purchased heroin from Salgado. *Id.* at 151-52. Rafferty admitted that he had previously paid for the heroin by sending money to Humphrey, and intended to do the same this time, based on written payment instructions Salgado provided to Rafferty. Id. at 152-53.

Law enforcement personnel in Bayside State Prison subsequently searched Rafferty's cell and recovered, among other items, approximately four decks of suspected heroin. Trial Tr. 10/21/2021 at 75-83, 87-89. Subsequent laboratory testing confirmed that the substance inside the four decks contained heroin and fentanyl. *Id.* 121, 125-27.

NJDOC financial records confirmed that Rafferty had sent Humphrey approximately $140 on at least two prior occasions, and Humphrey confirmed the same in testimony. Gov't Trial Exhibits 305-07 (NJDOC Rafferty Trust Account Statement, Rafferty Check Review Report, and Person Receiving Checks from Multiple Offenders Report); Trial Tr. 10/22/2021 at 50-51. Additionally, at trial, Humphrey testified that she did smuggle heroin to Salgado during her October 18, 2015 visit to Bayside State Prison. Trial Tr. 10/22/2021 at 37. Humphrey further

- 5 -

testified that she obtained the heroin that she smuggled in from Salgado's associates, including Garrett. *Id.* at 39-42. Rafferty testified at trial that he sometimes sent money to Humphrey via Western Union by getting his girlfriend to send Humphrey money. Trial Tr. 10/21/2021 at 152, 154.

The jury found Salgado guilty of both counts. Crim. No. 19-659, ECF Nos. 82-94. Salgado appealed his conviction, arguing that this Court erred when it: (1) denied Salgado's pretrial motion to suppress recordings of his prison calls; (2) admitted lay witness testimony in which a prison investigator opined on the coded language Salgado used during the calls; and (3) denied Salgado's motion for a new trial.[2] *See United States v. Salgado*, No. 22-1878 (Jan. 26, 2023), ECF No. 121.

On January 30, 2023, a panel of judges of the United States Court of Appeals for the Third Circuit (the "Third Circuit") issued an opinion, in which it affirmed Salgado's conviction. *See* ECF No. 121.

On February 6, 2024, Salgado timely filed the instant Motion. *See* D.N.J. Civil No. 24-322-WJM, ECF No. 3. In it, he asked this Court to vacate, correct, or set aside his "conviction and[/]or sentences" for the following reasons: (1) his conviction and sentence contradicted the Fifth, Ninth, and Tenth Amendments to the United States Constitution; (2) he was prejudiced by his defense lawyer's decision not to argue that 21 U.S.C. § 802(25) has an intent requirement; (3) the definition of "serious bodily injury" in § 802(25) is unconstitutionally vague; and (4)

---

[2] Salgado also claimed that the evidence presented at trial was insufficient to sustain a conviction, but the Third Circuit concluded that Salgado had waived this argument by not providing any reasoning to support it.

he received ineffective assistance of counsel because his defense counsel, Michael P. Koribanics, Esq. ("Koribanics"), did not (i) investigate Rafferty's other drug use, (ii) make certain arguments, including, for instance, whether the drugs Rafferty ingested from the defendant were the but-for cause of his injuries, (iii) research whether the charges brought against Salgado were consistent with the Fifth, Eighth, Tenth, and Fourteenth Amendments to the United States Constitution, and (iv) file certain unidentified pretrial motions. *See* D.N.J. Civil No. 24-322-WJM, ECF No. 3.

On April 3, 2024, Salgado moved for leave to supplement his Motion, in which he: (1) expanded and clarified his argument that Koribanics failed to argue that the Government had the burden of demonstrating but-for causation; and (2) argued that Koribanics was generally unprepared for trial and failed to take a series of tactical and strategic approaches that might have changed the outcome of the trial. *See* D.N.J. Civil No. 24-322-WJM, ECF No. 9. Salgado also requested court-appointed counsel in the supplemental motion. *See id.* On April 9, 2024, the Court granted Salgado's motion for leave to amend his prior Motion but did not grant appointment of counsel. *See id.*, ECF No. 11.

**ARGUMENT**

## I.   LEGAL STANDARD FOR SECTION 2255 RELIEF

A motion under § 2255 is a collateral attack on the legality of a sentence.  *See Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002); *United States v. Cannistraro*, 734 F. Supp. 1110, 1119 (D.N.J. 1990).[3] The grounds for collateral attack under § 2255 are limited. *See United States v. Addonizio*, 442 U.S. 178, 184 (1979), and the movant bears the burden of establishing any claim asserted in the petition*, see Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985); *Word v. United States*, 604 F.2d 1127, 1130 (8th Cir. 1979) ("In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner."). A motion under § 2255 will be granted only if the sentence results "in a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *United States v. Cleary*, 46 F.3d 307, 311 (3d Cir. 1995).

---

[3] Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .

28 U.S.C. § 2255.

- 8 -

As the Supreme Court has emphasized, a defendant may not use a § 2255 motion as a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). Accordingly, a defendant who uses a § 2255 motion to raise a claim that he or she should have raised at trial, sentencing, or direct appeal must show both "cause" for not raising it then and "actual prejudice" resulting from the claimed error. *Id.* at 167-68; *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993).

A § 2255 motion may be used to raise a claim of ineffective assistance of counsel. Indeed, the Third Circuit prefers that such claims be brought via § 2255 motions. *See United States v. DeRewal*, 10 F.3d 100, 103-04 (3d Cir. 1993). And, for constitutional claims that were forfeited at trial or on appeal, "[a] showing of ineffectiveness of counsel which rises to the level of a constitutional deprivation can indeed constitute the type of [cause and] prejudice that will excuse procedural default." *United States v. Sanders*, 165 F.3d 248, 250 (3d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 753-55 (1991).

To establish a claim of ineffective assistance of counsel in violation of his Sixth Amendment rights, Salgado must show *both* that: (1) his counsel's performance fell below an objective standard for reasonableness under prevailing standards of professional norms; and (2) that counsel's failures prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sanders*, 165 F.3d at 250.

The first *Strickland* prong requires the movant to show that his attorney's performance was not only deficient, but fell below "prevailing professional norms" and was "outside the wide range of professionally competent assistance."

*Strickland*, 466 U.S. at 690. For example, counsel's failure to protect the defendant's right to testify would render his or her performance "below the constitutional minimum" and thereby violate the first prong of *Strickland*. *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992). But trial counsel's "strategic choices . . . are virtually unchallengeable," *Strickland*, 466 U.S. at 690, and a court "reviewing counsel's performance must be highly deferential," *United States v. Lore*, 26 F. Supp. 2d 729, 738 (D.N.J. 1998) (Rodriguez, J.) (citing *Strickland*, 466 U.S. at 689).

Under the second *Strickland* prong, the movant must demonstrate that he or she suffered prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 689. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the case. *Id.* at 694. In other words, counsel's deficiency must lead to the "result of the proceeding [being] fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Moreover, nothing prevents a court from analyzing whether the movant has proven prejudice, and after concluding that the petitioner has not, denying the petitioner's claim without ever analyzing counsel's performance. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"); *Smith v. Robbins*, 528 U.S. 259, 286, n.14 (2000).

Lastly, § 2255 claims must be specific and well grounded, and those that are not should be dismissed. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition"); *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations may be disposed of without further investigation"); *Bradica v. United States*, 2013 WL 454911, at *4 (W.D. Pa. Feb. 6, 2013) ("a claim of ineffective assistance must identify the specific error[s] counsel had made").

## II. SALGADO'S CONSTITUTIONAL AND SCIENTER CLAIMS CANNOT BE RAISED FOR THE FIRST TIME IN A 2255 MOTION AND ARE NONETHELESS MERITLESS

Salgado failed to raise any of the claims in his Motion before, during, or after trial in the District Court or on direct appeal. That means they are procedurally defaulted, and he cannot raise them now in the instant Motion. *See Murray v. Carrier*, 477 U.S. 478, 490–92 (1986) (stating that a claim not raised on direct appeal is procedurally defaulted). As such, this Court should deny his claims. Moreover, as explained below, each of those claims is meritless.

"Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *Frady*, 456 U.S. at 164-65. "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks." *Id.* at 165.

- 11 -

"To the contrary, a final judgment commands respect," *id*. and "a collateral challenge may not do service for an appeal." *Id*.

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id*. at 167-68. Salgado "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 170.

Salgado does not plead any basis for overcoming his default, and he also does not proclaim or establish actual innocence. *Murray*, 477 U.S. at 497 (denying a procedurally barred discovery claim unless it could be determined that there was sufficient evidence of actual innocence). He admits in his Motion that he did not raise several of his claims, and states that he did not do so either because of what he describes as Koribanics' failure to listen or general failure to raise the claims. *See generally* Motion. But this does not establish cause for that failure.

First, Koribanics does not recall a conversation with Salgado about many of the claims Salgado raised in his Motion. Declaration of Michael P. Koribanics, Esq. ("Koribanics Decl."), attached hereto as Exhibit A, ¶¶ 8, 10-11, 12(b), 12(d). But even assuming *arguendo* that Koribanics was aware of Salgado's interest in making additional claims not raised on appeal, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite

recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Indeed, and second, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts" to comply with the procedural rule. *Id*. at 488. But Salgado does not point to a single variable external to the defense with respect to any of his claims, and there does not appear to be one. Had a specific legal or factual claim not been available to counsel at the time or if there had been "'some interference by officials,'" then that might meet the cause standard. *See id*. (citing *Reed v. Ross*, 468 U.S. 1 (1984) and quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)). But that is not the case here.

Ineffective assistance of counsel could, however, serve as a basis to overcome procedural default. *See id*. at 488-89. However, and as further outlined below alongside each relevant claim, Koribanics did not provide ineffective assistance of counsel. Moreover, even if Salgado could establish cause sufficient to excuse his procedural default, he has not demonstrated actual prejudice. *See Bousley v. United States,* 523 U.S. 614, 615 (1998). As set forth in sub-sections c through f of this brief, Salgado cannot establish cause, cannot establish actual prejudice, cannot show that counsel was ineffective in any regard, and he cannot show that even if Koribanics had raised each claim Salgado now highlights, the result would be different.[4]

---

[4] Salgado's § 2255 motion primarily addresses the "serious bodily injury" enhancement, so even if Salgado prevails, he would remain properly convicted of the lesser included offense of distribution and possession with intent to distribute heroin and fentanyl. Thus, even if Salgado's arguments were convincing, and they are not, the proper remedy under § 2255(b) would be to resentence Salgado without

### A.  Salgado's Conviction and Sentence Are Consistent with the Fifth, Ninth, and Tenth Amendments to the United States Constitution

#### i.  Fifth and Ninth Amendments

Salgado asserts generally that his conviction conflicts with the Fifth and Ninth Amendments to the United States Constitution. However, these claims are procedurally defaulted because Salgado never raised them at trial or on direct appeal. *Murray*, 477 U.S. at 490–92. Additionally, Salgado has not attempted to establish cause for not previously raising these claims nor can he show actual prejudice as a result of not raising these claims. *Frady*, 456 U.S. at 167-68. Nonetheless, the Government assesses Salgado's arguments on the merits.

Salgado's Motion fails to show cause, prejudice, or actual innocence. Rather, Salgado's arguments consist of bald assertions that are vague and incomprehensible. First, and with respect to Salgado's Fifth Amendment argument, he does not claim that he was forced to speak or otherwise incriminate himself or that he was denied a procedural due process right during or after trial. In fact, he exercised his right to appeal his conviction and did not object on due-process grounds. *See* ECF Nos. 115, 121-2. Salgado also has not asserted that his case was not properly indicted by a grand jury, nor could he since he was, in fact, indicted by a grand jury. *See* ECF No. 32. As a result, without more, Salgado's claim that his

---

application of the mandatory minimum. *See United States v. Moya*, 5 F.4th 1168, 1188 n.11 (10th Cir. 2021) (where the court notes that even if the defendant prevailed on his sufficiency of the evidence argument, he would remain convicted of the lesser included offense of distributing heroin).

conviction violated the Fifth Amendment is frivolous, as he has not identified a specific basis for this claim and has not cited a procedural defect that robbed him of the due process guarantees provided for under the Fifth Amendment.

Second, Salgado asserts generally that his conviction contradicts the Ninth Amendment of the United States Constitution, but does not say what, specifically, was violated. This claim is so bereft of factual and legal support that it should be summarily rejected. *See Palmer*, 592 F.3d at 395; *Thomas*, 221 F.3d at 437.

### ii. Tenth Amendment

Salgado claims that his conviction violates the Tenth Amendment to the United States Constitution. This claim, too, is procedurally barred and groundless. Like his other claims, he failed to raise it at trial or on direct appeal. *Murray*, 477 U.S. at 490–92. And Salgado has not identified any "objective factor external to the defense" that impeded Koribanics' effort to bring this argument or some kind of "interference" on behalf of government officials. *Murray*, 477 U.S. at 488.

Notwithstanding, Salgado's argument is meritless, baseless, and he is unable to establish cause or prejudice with respect to these claims. *Frady*, 456 U.S. at 167-68. The Tenth Amendment provides that powers not delegated to the federal government are reserved for the states. *See* U.S. Const. amend. X. Salgado does not provide a detailed argument, but he appears to claim that because he was incarcerated on a state conviction at the time of his federal offense, any conduct that may have occurred while he was in state custody should have been handled by state authorities.

However, Salgado cannot find support for his argument in the Tenth Amendment. The Tenth Amendment does not preclude federal law enforcement officials from enforcing federal law, regardless of whether the underlying conduct occurred while the accused was in state custody. Salgado cites to no law in support of this claim, because no such law exists. At the time of his offense, Salgado was serving a ten-year sentence after having been convicted of offenses related to the unlawful possession of a firearm. *See* PSR ¶ 61. Because he was in state custody, Salgado implies that the Tenth Amendment was violated. But that is not the case, as there is no "constitutional reason . . . why a prosecution may not proceed against a State prisoner who has been brought to federal court for federal charges." *Strawderman v. United States*, 436 F. Supp. 503, 504 (E.D. Va. April 12, 1977). In short, simply being in state custody does not immunize defendants from federal prosecution if federal law covers their offense conduct. *See* U.S. Const. art. II, § 6 (Constitution and federal laws are the supreme law of the land).

Accordingly, Salgado has not asserted a cognizable Tenth Amendment claim.

## B. Salgado's Claim that 21 U.S.C. § 802(25) has a Scienter Requirement is Procedurally Barred and Without Merit

Salgado also claims that § 802(25) has a scienter requirement, and that Koribanics provided ineffective assistance of counsel when he decided not to investigate or research this issue further. Motion at 6. This claim, as with the Constitutional claims, is procedurally barred because Salgado never raised it at trial or on direct appeal, *Murray*, 477 U.S. at 490–92, nor has Salgado established cause or actual prejudice. *Frady*, 456 U.S. at 167-68.

- 16 -

Count Two of the Indictment charged Salgado with distribution and possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Section 841(b)(1)(C) provides that if a defendant violates the provision, the individual "shall be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C). However, "if death or serious bodily injury results from the use of such substance [the offender] shall be sentenced to a term of imprisonment not less than twenty years or more than life." *Id*.

21 U.S.C. § 802(25) defines the term "serious bodily injury," as that term is used in 21 U.S.C. § 841(b)(1)(C). "Serious bodily injury" must involve:

> (A)  a substantial risk of death;
>
> (B)  protracted and obvious disfigurement; or
>
> (C)  protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

21 U.S.C. § 802(25).

The plain text of both § 802(25) and § 841(b)(1)(C) does not require any specific intent or scienter. A straightforward reading of the text suggests that simply causing "serious bodily injury," as defined, is sufficient to increase the penalty by applying the mandatory minimum of 20 years' imprisonment. Salgado claims that because serious bodily injury triggers a mandatory-minimum penalty of 20 years, there must be "a robust scienter requirement" in place. Motion at 6. Otherwise, Salgado argues, § 802(25) would be constitutionally dubious. *Id*. Nonetheless, intent is not required simply because there is a mandatory-minimum

penalty when serious bodily injury results from the offense. Indeed, § 841(b) contains a series of mandatory minima pegged to the drug type and quantity that do not require any showing beyond the knowledge and intent to distribute required for the basic offense.

Additionally, the Government could not find a single case ruling that "serious bodily injury," and the related mandatory-minimum sentence that is triggered under § 841(b)(1)(C), requires intent. To the extent there is controversy regarding § 802(25), it appears to be with respect to what kinds of injuries are eligible and/or whether there is sufficient evidence at trial to show that the resulting injuries met the definition. *See e.g.*, *Cockrell v. United States*, 2016 WL 11190470 (E.D. Tex. Oct. 18, 2016) (where the court highlights that the defendant's argument "turns on whether the government made an evidentiary showing sufficient to convince a reasonable jury that" the victims experienced serious bodily injury as defined in 21 U.S.C. § 802(25)); *United States v. Piaquadio*, 2021 WL 2946472 (3d Cir. July 14, 2021) (where the court considered defendant's argument that there was insufficient evidence to show that the victim was at substantial risk of dying, and therefore did not meet the definition of "serious bodily injury.").

Furthermore – and even though Salgado raises this claim only in his initially rejected 2255 motion, *see* Civ. No. 24-322, ECF No. 1, and not in the subsequently filed Motion – Salgado cannot credibly contend that Rafferty's injuries do not amount to "serious bodily injury" under § 802(25) because courts have previously "sustained convictions for this offense where the victim survived an overdose from

the use of a controlled substance." *United States v. Cooper*, 990 F.3d 576, 582 (8th Cir. March 2, 2021) (citing *United States v. Seals*, 915 F.3d 1204, 1207 (8th Cir. Feb. 15, 2019) (where that court sustained a conviction where the victim became unconscious following use of a substance that contained heroin and fentanyl)). Here, Rafferty testified at trial that he "sniffed" the heroin, remembered "falling forward," and "getting really hot" before falling unconscious and being resuscitated. Trial Tr. 10/21/2021 at 140-42. Rafferty also testified that he was hospitalized for nearly two days following the incident. *Id.* at 145. These facts are not meaningfully different from other cases where courts have determined that falling unconscious following narcotics use can amount to "serious bodily injury" under § 802(25).

## C.   Section 802(25) is not Unconstitutionally Vague

Salgado argues that 21 U.S.C. § 802(25) is unconstitutionally vague as applied. Motion at 8. For the same reasons as discussed above, this claim is procedurally barred because Salgado never raised it at trial or on direct appeal, nor has he established cause or prejudice with respect to this claim. Nonetheless, the Government assesses Salgado's arguments on the merits.

The void-for-vagueness doctrine requires that criminal statutes define the offense conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). In the context of the criminal law, "the Supreme Court has held that since vagueness attacks are based on lack of notice, 'they may be overcome in any specific case

- 19 -

where reasonable persons would know their conduct puts [them] at risk' of punishment under the statute." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (quoting *Maynard v. Cartwright*, 486 U.S. 356, 108 (1988)). As a result, a criminal statute needs to provide people with "fair warning" that certain actions are prohibited. *See id*. at 1135 (relying on *Colten v. Kentucky*, 407 U.S. 104 (1972)).

This Court must consider Salgado's vagueness argument alongside "the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975) (providing that vagueness challenges to statutes that do not involve the First Amendment must be considered in light of the case's specific facts). In this case, Salgado provided Rafferty with heroin, a Schedule I controlled substance. Under the Controlled Substances Act, heroin is one of the drugs that has "a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801, Congressional Findings and Declarations: Controlled Substances. The prospect of death or injury from an overdose is not unknown or unreasonable to foresee. In fact, the prospect of certain narcotics, including heroin, causing death or serious injury is so sufficiently foreseeable that legislators mandated a 20-year imprisonment minimum for those who distribute drugs to individuals who are subsequently seriously injured by their use. *See* 21 U.S.C. § 841(b)(1)(C).

As outlined above, § 802(25) defines the term "serious bodily injury" by providing three interpretive anchors – "substantial risk of death," "protracted and obvious disfigurement," and "protracted loss or impairment of the function of a

bodily member, organ, or mental faculty." And § 841(b)(1)(C) provides that "if death or serious bodily injury results from the use of" the distributed substance, the minimum penalty "shall be not less than 20 years" imprisonment. To be sure, the drafters of the text could have written explicitly that intent is not a required element, but they did not have to do so here. *San Filippo*, 961 F.2d at 1136 (providing that "[s]imply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague.") However, the words the drafters used are clear to "men of common intelligence" and puts them on sufficient notice that any resulting serious bodily injury could lead to an enhanced sentence. *Connelly v. General Const. Co.*, 269 U.S. 385, 391 (1926). In light of heroin's legislatively recognized dangerousness and the threat it poses to human life, Salgado cannot credibly contend that this portion of the Controlled Substances Act is unconstitutionally vague.

## III.   SALGADO'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ARE WITHOUT MERIT

The remaining claims in the Motion allege ineffective assistance of counsel. The claims are largely incoherent or bald assertions that lack any evidentiary or legal support. Moreover, for all of his claims, Salgado fails to show either that counsel's performance fell outside an objective standard of reasonableness or that he was prejudiced by counsel's actions and, therefore, he cannot meet the "highly demanding" standard to show his counsel was constitutionally ineffective. *Fretwell*, 506 U.S. at 378.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689; *Gov't of the V.I. v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 689 (citation omitted). Accordingly, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks and citation omitted).  As the Third Circuit has emphasized: "Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, [the Court of Appeals has] cautioned that it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" *Beuhl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

To show that his counsel was ineffective, a petitioner also must meet a two-part test. A petitioner must establish both (1) "that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the petitioner was prejudiced. *Beuhl*, 166 F.3d at 169

(quoting *Stickland*, 466 U.S. at 687). To show that counsel was not functioning as counsel, the petitioner must show "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms." *Sanders*, 165 F.3d at 250; *see Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To meet the prejudice prong, the petitioner must demonstrate that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner also must show that the result of the proceeding is "fundamentally unfair and unreliable." *Fretwell*, 506 U.S. at 367. Finally, as the Third Circuit has stressed, "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Beuhl*, 166 F. 3d at 172.

Finally, § 2255 claims must be specific and well grounded, and those that are not should be dismissed. *See Palmer*, 592 F.3d at 395 ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition"); *Thomas*, 221 F.3d at 437 ("vague and conclusory allegations may be disposed of without further investigation"); *Bradica*, 2013 WL 454911, at *4 ("a claim of ineffective assistance must identify the specific error[s] counsel had made").

Here, Salgado has failed to meet either prong of the *Strickland* test regarding his ineffective assistance claims. For the most part, his claims are simply "bald

- 23 -

assertions and conclusory allegations" that can be rejected on that basis alone. *Palmer*, 592 F.3d at 386. To the extent that any of his claims are specific, they are based on errors of fact and Salgado's erroneous interpretation of the law.

### A. Defense Counsel was not Ineffective for Failing to Assert that there was a Scienter Requirement for Causing Bodily Injury

For starters, there was no clear basis in precedent for Koribanics to argue that § 802(25) requires intent in order to meet the definition of "serious bodily injury," and then to apply the 20-year mandatory minimum applicable under 21 U.S.C. § 841(a)(1) and (b)(1)(C).

As explained above, there is little reason to believe that the definition of "serious bodily injury" under § 802(25) necessitates proof of intent to cause such injury. And while "counsel does have a duty to make reasonable investigations of the law," there is no clear obligation to go on fishing expeditions not clearly invited by a statute's text or interpretations of the same. *United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 691). Had Koribanics failed to cite binding precedent holding that intent is required to prove "serious bodily injury," that might possibly rise to the level of ineffective assistance of counsel. *See Otero*, F.3d 502 at 336. However, in this case, Koribanics would have had no clear binding authority to rely on. And even if another attorney might have gone the extra mile to construct a creative argument of the kind Salgado now puts forward, that does not make Koribanics' performance objectively unreasonable. After all, "a lawyer's failure to perceive the ground for crafting an argument that might have

succeeded is very different from the failure to meet the level of competence required by the Sixth Amendment." *Beuhl*, 166 F.3d at 180 (Alito, J.).

Even if Koribanics had explicitly argued that § 802(25) requires intent to cause serious bodily injury, because the plain text does not support that argument and there is no apparent case law to support the same, Salgado cannot show prejudice. *Sanders*, 165 F.3d at 253 ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

### B. Salgado's Claims that Defense Counsel was Unprepared, Failed to Make Certain Constitutional Arguments, and Failed to Investigate a "But For" Causation Defense Fail the *Strickland* Test

Salgado's arguments that Koribanics was "wholly unprepared," did not investigate vague constitutional arguments, and failed to investigate a but-for causation defense, including by, for instance, not relying on expert analysis and testimony, all fail the *Strickland* elements.

### i. General Preparation and Research

Salgado makes a general claim that Koribanics was unprepared for trial, in part because Koribanics did not investigate whether, or argue that the Indictment was in violation of the Fifth, Eighth, Tenth, and Fourteenth Amendments to the United States Constitution. Motion at 9. More specifically, Salgado argues that Koribanics failed to make the Government establish that it had authority to prosecute Salgado given Salgado was in state custody at the time of the offense conduct, and not federal custody. *Id.*

Koribanics's decision not to investigate affirmatively the Government's authority to indict Salgado was a reasonable one. As previewed above, "a particular decision not to investigate" an issue must be assessed based on the totality of the facts, and "applying a heavy measure of defense to counsel's judgments." *Strickland*, 466 U.S. at 691. In this case, and as Koribanics acknowledged, it would have been a futile effort to raise this claim. Koribanics Decl. ¶ 12(c). As discussed above, *supra* para. II.a.ii, individuals are not protected from federal prosecution solely because, at the time of their offense conduct, they are in state custody. *See generally Strawderman*, 436 F. Supp. 503; *see also United States v. Jones*, 938 F.2d 447 (3d Cir. 1991) (where federal authorities prosecuted a defendant in temporary state custody for offenses unrelated to those for which he was in custody). As a result, Koribanics' decision not to argue that federal officials lacked the authority to prosecute Salgado was a reasonable one, and clearly within the norms of professional practice. Again, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *Sanders*, 165 F.3d at 253.

Additionally, Koribanics met with Salgado at least ten times in person leading up to trial, and shared with Salgado the Government's discovery materials so they could prepare their case. Koribanics Decl. ¶ 7. This, along with Koribanics many hours of preparation separate from these meetings, refute the fact that Koribanics was "wholly unprepared" for trial. *Id.*

As for the second prong of the *Strickland* test, because Koribanics' decision was a reasonable one, there was no prejudice to Salgado. But even if Koribanics had made this argument, it would not have changed the result, as federal authorities have the power to prosecute conduct that violates the federal criminal laws, regardless of whether the individual is in state or federal custody at the time the conduct occurs. In short, there was no prejudice to the Salgado.

## ii. **"But For" Causation**

Salgado argues that Koribanics failed to investigate and argue that the heroin supplied by Salgado was not the but-for cause of Rafferty's serious bodily injury, and that Koribanics failed to take certain steps, such as introducing expert testimony and analysis, to support this argument. But Koribanics did challenge the Government's presentation of evidence to support but-for causation and made reasonable decisions when he decided not to introduce certain expert testimony and not to conduct certain analysis. In brief, Koribanics' performance in this regard was consistent with his obligations under the Sixth Amendment and did not result in prejudice.

At the outset, it is no doubt true that the Government must prove that the controlled substance the defendant distributed resulted in the serious bodily injury that the victim suffered. *Burrage v. United States*, 571 U.S. 204, 218-19 (2014). But *Burrage* addressed a scenario where causation was much more difficult to establish, *i.e.*, where there were multiple drugs found in the victim's system, some of them controlled and some of them not. In that specific context, the Supreme Court said

that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id*. The victim in *Burrage*, unlike the victim in this case, died from a mixture of *several* intoxicants and no expert claimed that the § 841(a)(1)-violating drug caused the mixture to become fatal. That made a proper instruction on but-for causation (and proper legal sufficiency review under the correct interpretation of the statute) critical. *Burrage* also held that the "death results" provision "is an element that must be submitted to the jury and found beyond a reasonable doubt." *Id*. at 210.

Again, as already noted, this case does not involve a mixture of controlled substances. But even granting that "but for" causation was a question for jury determination here, Korbanics' performance well exceeded the Sixth Amendment threshold because he did, in fact, investigate and argue the matter at trial. For instance, in Koribanics' summation, Koribanics said that "there was no real testimony that but for this would have happened, because we don't know exactly what he took and if what he took in that urine matches what was found in the bags because you see it all comes in Rafferty's body but it doesn't connect us to anybody else." Trial Tr. 10/25/21 at 65. In that moment, Koribanics highlighted exactly what Salgado claims Koribanics did not – that the Government needed to establish but-for causation beyond a reasonable doubt. Indeed, Koribanics argued to the jury on behalf of Salgado that the Government had not met that burden.

- 28 -

Additionally, Koribanics raised a question with the jury charge with respect to "serious bodily injury." Trial Tr. 10/25/21 at 4. The Court read the instruction aloud, and it clearly included the requirement that the Government establish that Rafferty's use of the Salgado-supplied heroin be demonstrated as the but-for cause of Rafferty's serious bodily injury. The Government removed a sentence from a prior version of the instruction "at the request of [defense] counsel." *Id*. Koribanics raised a question because he appeared to have an older version of the instruction in his possession that would have excluded the but-for requirement. And even if the jury instruction were deemed to be less-than-ideal in its formulation, "before obtaining collateral relief for errors in the jury charge" in a § 2255 motion, the movant must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Frady*, 456 U.S. at 169. Salgado cannot meet this burden, primarily because the instruction was accurate.

In addition, and as outlined above, Koribanics brought additional attention to the but-for requirement in his summation, arguing that the Government had not met its burden. Therefore, Salgado cannot claim that Koribanics failed to investigate or raise this issue, as the trial transcript shows that he did do so on at least two occasions directly, and indirectly when he cross-examined Government witnesses. Salgado states in his supplement to his Motion that Koribanics removed the but-for requirement from the jury instruction, but the Court read aloud the instruction, and it incorporated that requirement. *See* Civ. No. 24-322, ECF No. 9 at

2-3. The trial transcript suggests that the Court did the opposite of what Salgado claims—it ensured that the but-for requirement was included in the jury instruction.

Salgado also claims that Koribanics erred when he failed to obtain an expert to testify regarding what, specifically, was contained in Rafferty's bloodstream, and whether the narcotics Rafferty metabolized were the same as those alleged to have been supplied by Salgado. First, a blood sample was never taken from the victim following the overdose in 2015. Thus, the expert analysis Salgado now calls for could not have occurred at all given that Salgado was not indicted until 2018. Even assuming *arguendo* that there is a case to make that expert testimony would have been beneficial – as there is the prospect that a specific analysis of the narcotics Rafferty metabolized might have produced evidence to cast doubt on Rafferty's testimony that he obtained the heroin from Salgado – introducing this analysis and testimony could have done the opposite, and shown definitively that the drugs were indeed the same as those Salgado supplied to Rafferty. This scenario is not entirely dissimilar to the one in *Shaw v. United States*, where the court determined that it was reasonable for a defense counsel not to call a DNA expert as a witness because of the reasonable fear that the testimony might not prove the defense's point and that, instead, it might be a stronger approach to focus on cross-examining witnesses, 2023 WL 4702195, at *3-4 (D.N.J. Sep. 1, 2023). Furthermore, Koribanics acknowledged that part of the reason he decided not to introduce this specific expert testimony was because it could have demonstrated the point he was attempting to

cast doubt on. Koribanics Decl. ¶ 13. Koribanics' decision not to request expert testimony was not unreasonable in this case, as doing so carried litigation risk of its own. *See Shaw v. United States*, 2023 WL 4702195, *3-*4 (D.N.J. Sep. 1, 2023).[5]

Here, and even without expert testimony, the chain-of-custody was still ascertainable. First, Rafferty testified that he was directed to Salgado for drugs, that Salgado gave him a piece of paper that instructed Rafferty to pay Humphrey for the heroin, and that, on this specific occasion, Salgado had a third party deliver the heroin directly to him by slipping it under his cell door. Trial Tr. 10/21/21 at 149-56. Despite the linear chain of events, Koribanics cross-examined Rafferty, and still attempted to cast doubt on the idea that Rafferty knew who, specifically, was responsible for the heroin supplied to him that day. *See* Trial Tr. 10/21/21 at 180-89. But Rafferty was clear that he saw Salgado's agent give him the heroin. *See id.* Rafferty also did not testify that he used other drugs that day that might have caused the overdose.

Moreover, and second, Humphrey testified that she was in a relationship with Salgado, that she lived in Jersey City in October 2015, that she talked to Salgado on the phone on October 17, 2015, that she met with Garrett to pick up narcotics, that she packaged narcotics, that she visited Salgado at Bayside State Prison on October 18, 2015 with the packaged narcotics, that she concealed the

---

[5] Additionally, Salgado has not submitted any expert report with his § 2255 motion suggesting that he would have received favorable testimony. Therefore, Salgado cannot show any prejudice as a result of Koribanics's decision not to retain an expert.

narcotics in her mouth, and that she delivered narcotics directly to Salgado during her October 18 visit. Trial Tr. 10/22/21 at 24, 32, 34, 39-46. She also stated that, on prior occasions, she had received payments from Rafferty, and that she had understood the money to be for narcotics. *Id.* at 50-51.

In short, even though there might have been a benefit associated with introducing expert analysis and witness testimony regarding the specific drugs within Rafferty's bloodstream at the time of the incident, there was ample evidence at each stage to link the chain of events from Salgado's authorization of the distribution of heroin to Rafferty to Rafferty's subsequent serious bodily injury. And, furthermore, such an analysis was impossible given a blood sample was not taken from the victim at the time of the overdose. As a result, and in light of the "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," Koribanics' decision not to introduce the expert analysis and testimony Salgado now raises was a reasonable one, and cannot form the basis of a claim of ineffective assistance of counsel. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996). Put simply, this case rose and fell on the jury's assessment of the credibility of Rafferty's testimony that he received drugs from Salgado through an intermediary, and Koribanics reasonably focused his efforts on undermining the credibility of Rafferty's account.

Lastly, even if the court determines that Koribanics' performed deficiently, Salgado cannot establish prejudice because the jury instruction was clear that the Government had the burden to prove that it was the Salgado-supplied heroin that

caused Rafferty's serious bodily injury, and even now Salgado has tendered nothing to undermine the proof of causation on which the Government relied. Joint Proposed Jury Instruction, Request 21 (noting that "[i]n order to find that serious bodily injury resulted from the use of the controlled substance, you must find that the Government proved beyond a reasonable doubt that the use of the substance was a but-for cause of the injury . . ."). As a result, Salgado cannot show that, but for Koribanics' performance, the outcome of his trial might have been different. So even if Koribanics could have made different or stronger arguments regarding but-for causation, the jury knew what the Government's burden was in this case, and returned a verdict of guilty on both counts due to the evidence strongly corroborating Rafferty's testimony about how he paid Salgado through Humphrey. As a result, Salgado cannot show that, but for Koribanics' performance, the outcome of his trial might have been different.

- 33 -

## CONCLUSION

For the reasons set forth above, this Court should deny Salgado's Motion without an evidentiary hearing because "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Arrington*, 13 F.4th 331, 334–37 (3d Cir. 2021). And because Salgado has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2), this Court should deny him a certificate of appealability. *See* Rule 11(a), Rules Governing Section 2255 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney


 */s/   Robert Taj Moore*
By:  Robert Taj Moore
Assistant U.S. Attorney

cc: Noel Salgado, *pro se* (by first class mail)