## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NOEL SALGADO,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. 2:24-cv-322 (WJM)<br><br><br>OPINION |

### WILLIAM J. MARTINI, U.S.D.J.

This is a habeas case. On October 26, 2021, a jury found Noel Salgado ("Petitioner") guilty on two counts: (1) conspiracy to distribute and possess with intent to distribute heroin and fentanyl, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846; and (2) distribution and possession with intent to distribute heroin and fentanyl resulting in serious bodily injury, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. This Court sentenced Petitioner to a total of 264 months imprisonment. Now incarcerated and proceeding *pro se*, Petitioner moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 3.[1] For the reasons set forth below, Petitioner's motion is **DENIED**.

### I.    BACKGROUND

#### A. Facts Underlying Petitioner's Indictment

In 2015, Petitioner orchestrated a scheme to smuggle heroin into Bayside State Prison ("Bayside"), ultimately resulting in the overdose of inmate Michael Rafferty ("Rafferty"). On October 17, 2015, Petitioner, incarcerated at Bayside in Leesburg, New Jersey for an unrelated offense, made two phone calls regarding the drug operation. Both calls were recorded pursuant to Bayside's policy of monitoring and recording inmate telephone conversations. Petitioner first contacted Rodgerick Garrett ("Garrett") to purchase the heroin. Petitioner then called Jasmir Humphrey ("Humphrey") to arrange for her to pick up the heroin and traffic it into Bayside during a prison visit the next day. On October 18, 2015, Ms. Humphrey visited Petitioner at Bayside as planned and gave him the heroin she purchased from Garrett. The following day, on October 19, inmate Rafferty was found unresponsive on the floor of his cell. After being administered naloxone by

---

[1] Unless otherwise indicated, citations refer to the instant matter, *Salgado v. U.S.*, No. 24-322 (D.N.J.).

medical personnel, Rafferty regained consciousness and eventually explained that he had used heroin obtained from Petitioner. Rafferty stated there were more drugs in his cell, and a search of his quarters uncovered four decks of suspected heroin. Laboratory testing revealed that the substance inside the four decks contained both heroin and fentanyl. Rafferty also stated that he had on other occasions purchased heroin from Petitioner that he paid for by sending money to Ms. Humphrey and had intended to do the same this time. A subsequent review of financial records revealed that Rafferty had transferred approximately $140 to Ms. Humphrey on at least two prior occasions. On January 22, 2016, Ms. Humphrey was arrested for her involvement in the Bayside scheme. She admitted that (1) Garrett had sold her the heroin that she subsequently delivered to Petitioner during her prison visit on October 18, 2015, and (2) she had helped smuggle drugs into Bayside on other occasions at the direction of Petitioner.

On September 6, 2016, law enforcement officers interviewed Petitioner concerning the events surrounding the overdose of inmate Rafferty. The seventeen-minute interview was filmed. On September 17, 2019, Petitioner was indicted and charged with (1) conspiracy to distribute and possess with intent to distribute heroin and fentanyl, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846 (Count I); and (2) distribution and possession with intent to distribute heroin and fentanyl resulting in serious bodily injury, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Count II). *United States v. Salgado*, Crim. No. 19-659, ECF No. 32.

B. Criminal Proceeding and § 2255 Motion

At trial,[2] the Government, in support of its case, presented evidence of Petitioner's recorded phone calls from Bayside, visitor logs showing Ms. Humphrey visited Bayside on October 18, 2015, medical reports concerning Rafferty's overdose, photographs of folds of substances recovered from Rafferty's cell, lab reports concluding the substances recovered were heroin and fentanyl, urinalysis reports concluding that Rafferty had opiates in his system, and a credit report showing prior payments from Rafferty to Ms. Humphrey. *See* Crim. No. 19-659, ECF No. 106. Further, the jury heard testimony from Bayside officials who responded to Rafferty's overdose, Rafferty himself, and Ms. Humphrey. *Id.* On October 26, 2021, the jury returned guilty verdicts on both counts and found that, with respect to Count II, Rafferty suffered serious bodily injury as a result of the heroin and fentanyl distributed by Petitioner. Crim. No. 19-659, ECF No. 94. To find that Petitioner's distribution of heroin and fentanyl resulted in serious bodily injury, the jury was required to find that Rafferty suffered "a substantial risk of death [or] protracted loss or impairment

---

[2] Before trial, Petitioner moved to suppress evidence, including (1) the recorded telephone calls he made from Bayside to Garrett and Ms. Humphrey and (2) the filmed interview with law enforcement officers on September 6, 2016. Crim. No. 19-659, ECF No. 64. This Court denied the motion in part, reserving judgment on the suppression of parts of Petitioner's interview with law enforcement. *Id.* Specifically, the Court refused to suppress the first eleven minutes of the interview but reserved judgment on the remainder of the interrogation after Petitioner declared he had "nothing else to say." *Id.*

of the function of a bodily member, organ, or mental faculty" as a result of Petitioner's distribution of heroin and fentanyl. 21 U.S.C. § 802(25)(A), (C); *see also* Crim. No. 19-659, ECF No. 106. This Court sentenced Petitioner to 24 months imprisonment for Count I and 240 months for Count II for a total of 264 months imprisonment. Crim. No. 19-659, ECF Nos. 112, 114. Petitioner moved for a judgment of acquittal, or, in the alternative, for a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure. Crim. No. 19-659, ECF No. 100. This Court denied that motion. Crim. No. 19-659, ECF No. 106. Petitioner appealed his convictions, arguing that the Court erred by (1) denying his pretrial motion to suppress recordings of his prison calls, (2) admitting lay witness testimony in which a prison investigator opined on the coded nature of language used by Petitioner during the calls, and (3) denying Petitioner's motion for a new trial. Crim. No. 19-659, ECF No. 128-2. The Third Circuit rejected these claims and affirmed the judgment of this Court. *Id.*

On February 3, 2024, Petitioner timely filed the instant motion to vacate, set aside, or correct his sentence pursuant to § 2255. ECF No. 3.[3] Petitioner subsequently moved to supplement his motion and requested court-appointed counsel. ECF No. 9. This Court granted Petitioner's motion to amend but did not appoint counsel. ECF No. 11. The Government filed a motion for an order allowing it to interview and receive documents from Petitioner's former defense counsel, Michael P. Koribanics, who represented Petitioner at trial and on appeal. ECF No. 12. The Court granted the motion, but limited the order to information necessary to fairly resolve Petitioner's ineffective assistance of counsel claims. ECF No, 15. On June 21, 2024, the Government filed its opposition to Petitioner's motion. ECF No. 18. Petitioner filed his reply on July 12, 2024. ECF No. 19.

## II.    LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence. Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Petitioner bears the burden of proving entitlement to relief under § 2255. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). He must establish that the sentence suffers from "a fundamental defect" causing "a complete miscarriage of justice"

---

[3] Petitioner initially filed a 93-page brief in support of his § 2255 motion, *see* ECF No. 1, and was subsequently directed to file his motion using the District's habeas petition form. *See* ECF No. 2.

or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003). Courts have a duty to "give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010).

Additionally, a district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). Here, the record conclusively demonstrates that Petitioner is not entitled to relief.

## III.   DISCUSSION

The arguments in Petitioner's § 2255 motion can be grouped into three buckets, though all claims involve or at least touch on ineffective assistance of counsel. First, Petitioner argues that his conviction and sentence contradict the Fifth, Ninth, and Tenth Amendments to the U.S. Constitution and, specifically, that his rights under the Tenth Amendment were violated in this case. ECF No. 3. Second, Petitioner makes two claims regarding § 802(25), which defines "serious bodily injury" as injury involving "(A) a substantial risk of death; (B) protracted and obvious disfigurement; or (C) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 21 U.S.C. § 802(25). Petitioner argues § 802(25) has a scienter requirement and that the definition of "serious bodily injury" is unconstitutionally vague. ECF No. 3. Finally, Petitioner makes various explicit arguments that his former lawyer, Mr. Koribanics, was ineffective. *Id.*

### A.  Constitutional Claims

Petitioner claims his rights under the Tenth Amendment were violated in this case and that his conviction and sentence contravene the Fifth, Ninth, and Tenth Amendments. ECF No. 3, Ground One. Petitioner appears to make a federalism argument with respect to the Tenth Amendment—that it precluded the federal government from prosecuting this case since Petitioner was incarcerated in state prison on a state conviction at the time of his offense.[4] *See* ECF Nos. 1, 3, and 19. Separately but relatedly, Petitioner argues that he was deprived his "rights to due process" when Mr. Koribanics failed to request a hearing concerning the federal government's "ability to prosecute the case at hand." ECF No. 3, Ground Four. Petitioner alleges he "attempted" to present the Tenth Amendment argument to the Third Circuit on appeal "but the matter was discarded" by Mr. Koribanics. ECF No. 3, Ground One. He also claims that he asked Mr. Koribanics to conduct research into whether his indictment was consistent with the Fifth, Eighth, Tenth, and Fourteenth Amendments to no avail. ECF No. 3, Ground Four.

---

[4] Petitioner's unsupported claims that his conviction conflicts with the Fifth and Ninth Amendments in "Ground One" are without merit. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (noting that "vague and conclusory allegations may be disposed of without further investigation").

Notably, a § 2255 motion cannot be used as a substitute for a direct appeal. *See Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074 (3d Cir. 1985). A habeas petitioner is typically barred from collaterally attacking his conviction or sentence using issues that could have been brought on appeal but were not. *Muhammad v. United States*, No. 20-15606, 2022 WL 445623, at *3 (D.N.J. Feb. 14, 2022) (citing *United States v. Frady*, 456 U.S. 152, 162-63 (1982)). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if he "can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citation omitted); *see United States v. Sanders*, 165 F.3d 248, 250 (3d Cir. 1999). Ineffective assistance of counsel can satisfy the "cause" element of the procedural default inquiry, *see United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000), but claims of ineffectiveness must rise to the level of constitutional deprivation under the test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).

Here, Petitioner appears to concede that his constitutional claims were not raised in his direct appeal,[5] and they are thus procedurally defaulted. *See Murray v. Carrier*, 477 U.S. 478, 490–92 (1986). In his motion, Petitioner does not demonstrate actual innocence, nor does he explicitly establish a valid "cause" for the default or show "prejudice" resulting from it. *See generally* ECF No. 3. He states that he attempted to present certain constitutional claims—particularly claims regarding the Government's authority to prosecute the matter—on direct appeal but was dismissed by Mr. Koribanics. *Id.* In his reply brief, Petitioner clarifies that he is indeed making an ineffective assistance claim that could potentially overcome procedural default. Reply at 2, ECF No. 19. However, to make out a claim of ineffectiveness, Petitioner must establish that Mr. Koribanics' performance was "deficient," which requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed …by the Sixth Amendment." *Strickland*, 466 U.S at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). Petitioner must also establish that Mr. Koribanics' allegedly deficient performance prejudiced his defense such that he was "deprive[d] of a fair trial ... whose result is reliable."[6] *Strickland*, 466 U.S. at 687. To satisfy the second component of *Strickland*, Petitioner has to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner fails to satisfy either prong of *Strickland*. There is no evidence that Mr. Koribanics' performance was deficient—that his alleged failure to make constitutional arguments constituted an error "so serious that [he] was not functioning as the 'counsel'

---

[5] Though Petitioner initially indicates on Form AO 243 that he raised this issue when he appealed (by checking the "Yes" box), he then states that he "attempted to present [the issue] to the Court of [A]ppeals but the matter was discarded" by counsel. ECF No. 3.

[6] An ineffective assistance counsel claim will fail if a petitioner cannot demonstrate either prong of the *Strickland* test, meaning that "the Court does not need to address both deficiency and prejudice—if either element is not satisfied, the analysis may end there." *United States v. Terry*, No. 14-1006, 2015 WL 4255527, at *3 (W.D. Pa. July 14, 2015) (citation omitted).

guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Mr. Koribanics' decision not to challenge the Government's authority to prosecute Petitioner was not unreasonable as Petitioner's argument is baseless. Individuals who happen to be in state custody at the time of an offense are not immunized from federal prosecution if federal law covers their conduct. *See United States v. Jones*, 938 F.2d 447 (3d Cir. 1991) (federal authorities prosecuted a defendant in temporary state custody for offenses unrelated to those for which he was in custody); *See* Koribanics Decl. ¶ 12(c). Moreover, under the Dual Sovereignty Doctrine, "both the state government and the federal government enjoy independent authority to prosecute any criminal act that violates the 'peace and dignity' of each of the sovereigns." *Wooten v. United States*, No. 13-3608, 2017 WL 253953, at *4 (D.N.J. Jan. 20, 2017) (citing cases). In addition to failing to show how Mr. Koribanics' performance fell outside an objective standard of reasonableness, Petitioner's motion does not demonstrate that Petitioner was prejudiced by counsel's purported action or inaction.

### B. Claims Regarding § 802(25)

Petitioner's arguments about § 802(25) similarly fail. First, he alleges that there is a scienter requirement connected to § 802(25) and that he was prejudiced by Mr. Koribanics' decision not to pursue this issue at trial or on appeal. ECF No. 3, Ground Two. Second, he contends that § 802(25) is unconstitutionally vague, and that Mr. Koribanics again failed to address the matter on appeal. ECF No. 3, Ground Three. In addition to being meritless, these claims are also procedurally defaulted and, in terms of an ineffective assistance claim, do not pass muster under *Strickland*, which requires (1) deficient representation and (2) resulting prejudice to the defense so serious as to bring the outcome of the proceeding into question. 466 U.S. at 687.

As noted, to find that Petitioner's distribution of heroin and fentanyl resulted in "serious bodily injury," the jury was required to determine that inmate Rafferty suffered "a substantial risk of death [or] protracted loss or impairment of the function of a bodily member, organ, or mental faculty" as a result of Petitioner's distribution of narcotics. 21 U.S.C. § 802(25)(A), (C). The plain text of § 802(25) does not indicate any scienter requirement—neither does the related mandatory minimum sentence triggered under § 841(b)(1)(C)—and there is no clear basis to argues that it does. Similarly, Petitioner cannot credibly claim that § 802(25) is "unconstitutionally vague," particularly given the understood dangerousness of heroin. The statute meets the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime." *Orie Melvin v. Dist. Att'y Allegheny Cnty.*, 798 F. App'x 706, 708 (3d Cir. 2020) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964)) (internal quotation marks omitted).

Mr. Koribanics asserts that Petitioner never in fact raised any issues regarding § 802(25) and does not recall having conversations about the purported intent requirement or the statute's alleged vagueness. *See* Koribanics Decl. ¶¶ 10-11. Regardless, Mr. Koribanics notes that these issues would not warrant "close consideration," and the Court agrees. *Id.* at ¶ 11. While counsel certainly has an obligation to make reasonable investigations of the law, "a wide berth is given to the strategic decisions of counsel and their professional

judgment." *United States v. Haisten*, 50 F.4th 368, 372 (3d Cir. 2022); *United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 691). Assuming arguendo Petitioner did raise these matters, Mr. Koribanics did not render ineffective assistance by not pursuing them. Petitioner fails to demonstrate that Mr. Koribanics' performance was deficient or that any alleged deficiency prejudiced his defense such that he was deprived of a fair trial.

## C. Other Claims of Ineffectiveness

Petitioner also alleges ineffectiveness of counsel in violation of the Sixth Amendment due to Mr. Koribanics' (1) failure to investigate other issues and pursue possible defenses and (2) overall unpreparedness during the case. *See* ECF Nos. 3, 9. As noted, a claim that counsel's assistance was so defective as to necessitate reversal of a conviction has two components, both of which must be satisfied. Petitioner again fails to meet the *Strickland* standard.

Petitioner alleges Mr. Koribanics failed to investigate inmate Rafferty's other drug use and make certain arguments, including whether the drugs Rafferty ingested from Petitioner were the but-for cause of his injuries. ECF Nos. 3, 9. Petitioner also contends that Mr. Koribanics failed to raise chain of custody issues and secure an expert to testify about what exactly was contained in inmate Rafferty's bloodstream—whether the metabolized narcotics were the same as those alleged to have been supplied by Petitioner. *Id.* But the record indicates that Mr. Koribanics did challenge the Government's presentation of evidence to support causation[7] and appears to have made a reasonable decision when he decided not to introduce expert testimony regarding the drugs in Rafferty's bloodstream.[8] As Mr. Koribanics observes, introducing expert analysis on this issue could have backfired and ultimately "proved the point we sought to refute at trial." Koribanics Decl. at ¶ 13. Notably, the Government presented ample evidence that (1) Petitioner knowingly and intentionally obtained controlled substances from Humphrey, intended to distribute, and in fact did distribute, those controlled substances to inmate Rafferty, and that the controlled substances were heroin and fentanyl and that (2) Rafferty suffered a serious bodily injury which he would not have suffered but-for Salgado's distribution of heroin and fentanyl. As noted above, such evidence included recorded phone calls from Bayside, visitor logs showing Ms. Humphrey visited Bayside, medical reports concerning Rafferty's overdose, photographs of folds of substances recovered from Rafferty's cell, lab reports concluding the substances recovered were heroin and fentanyl, urinalysis reports concluding that Rafferty had opiates in his system, and a credit report showing prior payments from Rafferty to Ms. Humphrey. *See* Crim. No. 19-659, ECF No.

---

[7] For instance, Mr. Koribanics stated in summation: "We know Narcan is used in overdoses, but there was no real testimony that but for this would have happened, because we don't know exactly what he took and if what he took in that urine matches what was found in the bags because you see it all comes in Rafferty's body but it doesn't connect us to anybody else." ECF No. 99.

[8] Mr. Koribanics notes that he did investigate and raise chain-of-custody issues, even though they did not succeed. *See* Koribanics Decl. ¶ 13(b).

106. In short, Mr. Koribanics' decisions were reasonable and cannot form the basis of a claim for deficient performance. Even if it could, Petitioner fails to establish prejudice under *Strickland*.

Finally, Petitioner contends that Mr. Koribanics was "wholly unprepared" during the case and failed to file unidentified pretrial motions. *Id.* These claims are, too, without merit and fail to satisfy either prong of *Strickland*. Mr. Koribanics recalls meeting with Petitioner at least ten times in person leading up to the trial, and shared with Petitioner the Government's discovery materials in preparation of the case. Koribanics Decl. ¶ 7. He also spent numerous hours of preparing for this case apart from these meetings. *Id.*

## IV.   CONCLUSION

For the reasons set forth above, Petitioner's motion is **DENIED** without an evidentiary hearing. Moreover, the Court **DENIES** a certificate of appealability as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order shall follow.

WILLIAM J. MARTINI, U.S.D.J.

December 2024